## COURT OF APPEALS,

### Jan. 3, 1911.

# THE PEOPLE v. ROCO CHIARO.

### (200 N. Y. 316.)

MURDER—FACTS EXAMINED AND HELD SUFFICIENT TO SUSTAIN VERDICT
OF CONVICTION—EVIDENCE OF MOTIVE AND INTENT—REFUSAL TO
GRANT A NEW TRIAL APPROVED.

The rule that a person intends that which is the natural and
necessary consequence of his act accords with sound reason,
and is applicable to capital cases.

The facts proven upon the trial of a defendant indicted for mur-
der examined, and *held*, that they are evidence of both motive and
intent; that the verdict convicting the defendant was neither
against the weight of evidence nor against law, and that there is
nothing to be found in the evidence or the procedure which would
justify granting a new trial.

APPEAL from a judgment of the Supreme Court, rendered
March 28, 1910, at a Trial Term for the county of Onondaga,
upon a verdict convicting the defendant of the crime of murder
in the first degree.

The facts, so far as material, are stated in the opinion.

*Thomas Woods* for appellant. The question of defendant's
guilt of the crime of murder in the first degree should not have
been submitted to the jury, and the finding of the jury on this
question is against the evidence and against the weight of
evidence. (*People* v. *Raffo,* 180 N. Y. 434; *People* v. *Barberi,*
149 N. Y. 256; *People* v. *Mangano,* 29 Hun, 259; *Daly* v.
*People,* 32 Hun, 182.)

*George H. Bond, District Attorney,* and *George W. Standen*
for respondent. The questions of premeditation, deliberation
and intent were for the jury, and the evidence was ample under

the law upon which the verdict of the jury was based. (*People v. Kiernan,* 101 N. Y. 618; *People v. Majone,* 91 N. Y. 211; *People v. Constantino,* 153 N. Y. 24; *People v. Governale,* 193 N. Y. 581; *People v. Ferraro,* 161 N. Y. 365; *People v. Schmidt,* 168 N. Y. 575.)

COLLIN, J.   The defendant on Sunday, January 30, 1910, caused the death of William F. Keene by shooting him with a revolver.   At about six o'clock in the afternoon of that day, the defendant, said Keene and William F. Marsh were in the yard of the Warner-Quinlan Company at Syracuse, N. Y. Defendant was in the employ of that company as a laborer, Keene as a teamster and watchman at the yard and Marsh as a foreman and watchman at the yard.   The defendant asked Marsh, who as night watchman was about to take the place of Keene as day watchman, to let him watch that night and Marsh replied that the company did not allow any Italian to watch. A friendly conversation consisting of several sentences then ensued between defendant and Marsh in the presence of Keene, at the close of which defendant for a reason not apparent said to Marsh that he was a liar, prefixing the appellation with an oath.   Thereupon Marsh ordered the defendant to leave the yard and, the defendant not complying or moving, took the defendant by the shoulder, and led him toward the gateway leading from the yard into the street.   As they came near the gateway the defendant protested against going out of the yard. Marsh then said to him, " I have a notion to smash your damned face for you," grasped him with both hands, shook him so that his cap fell off, told him to pick it up, which he did, and then said to him, " You get out of the yard, and stay out, and don't you come to work to-morrow."   The defendant walked through and beyond the gateway into the street ten or fifteen feet. Marsh thereupon walked back into the yard, and after passing through the distance of about thirty feet heard some one behind.

him running. He turned about and saw the defendant about fifteen feet from him pointing a revolver at his head, and heard him say, " Hands up, you son of a bitch. Do I go to work to-morrow ? " Keene, who was standing thirty feet or thereabouts from defendant, said to him as he was pointing the revolver at Marsh, " Put up your gun; " whereupon defendant pointed the revolver towards Keene and said, " You hands up," and Keene obeyed. Marsh looked at defendant, said to him, " What in Hell is the matter with you ? " walked to him, took him by the shoulder, defendant having put the pistol in his overcoat pocket, faced him toward the gateway and ordered him to go out. They walked through the fifteen feet to the gateway, the defendant dropping slightly behind Marsh, and as they were in the gateway defendant said, " I kill you, son of a bitch," and twice shot Marsh in the back. Keene said, " For why you kill Willie Marsh ? " and defendant replying, " Yes and you, too," fired into Keene the bullet which caused his death. The interval between the two shootings of Marsh was one second and between the last shooting of Marsh and the shooting of Keene was two seconds. The revolver used by defendant was, through no disclosed reason or purpose, placed by him in his pocket during the forenoon of that day. Until this occasion the relations between the parties had been uniformly and thoroughly friendly. The foregoing statement is based upon the evidence in behalf of the People. Inasmuch as the jury adopted with ample justification such evidence, rather than that in behalf of the defendant, widely differing therefrom, it is not necessary to state the facts the latter tended to establish.

The defendant's counsel earnestly and ably argues that the trial court erred in submitting to the jury the question whether the defendant was guilty of murder in the first degree, because the evidence did not tend to prove that the defendant shot Keene from a deliberate and premeditated design to effect his death. We cannot reach that conclusion. The fact that the defendant,

when at the point of ten or fifteen feet without the gate, turned about and ran toward Marsh, taking the pistol from his pocket at some instant after Marsh at the gateway had turned his back upon him, is evidence that the defendant had formed and held the design to use the pistol.   His exclamation and question to Marsh and command to Keene are additional evidence that the design existed when they were uttered.   The conduct of Marsh and the direction of Keene may have stayed the execution of the design, but the subsequent words and acts of the defendant are evidence that it included within its scope the shooting of Keene. The trial court could not determine, as a matter of law, that the mind of the defendant as he shot Keene did not hold the design to do the act, or the precise instant of time when the design, if existing, was formed or its extent or quality.   The law is that a design which precedes the killing by a space of time sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill, may be a deliberate and premeditated design to kill.   (*People* v. *Governale,* 193 N. Y. 581, 590.) Defendant's counsel contends further that the judgment lacks support essential to its legality, in that the evidence does not tend to prove any motive or intent on the part of defendant to kill Keene.   The facts constituting the transaction were evidence of both motive and intent.   The rule that a person intends that which is the natural and necessary consequence of his act accords with sound reason, and is applicable to capital cases. The facts not only did not preclude, but were evidence of the existence in the mind of defendant of the intent to kill.   They were evidence also of the existence of a motive springing from the harsh and insulting treatment accorded him by Marsh and witnessed, without interference at least, if not with approval, by Keene, prompting his mind to shoot and kill Marsh and Keene.   Moreover, the killing was plainly proven to be willful, and the finding of a motive therefor was not essential.   Under

the evidence the trial court did not err in imposing upon the jury the duty of determining from the facts and circumstances connected with the shooting the character of the act and the degree of crime which should be attached to it.    An examination of the record convinces us that the verdict was neither against the weight of evidence nor against law; nor do we find anything in the evidence or in the procedure which would justify us in holding that justice requires a new trial.    A careful consideration of each exception taken by defendant reveals no error.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, WERNER, HISCOCK and CHASE, JJ., concur; WILLARD BARTLETT, J., not voting.

Judgment of conviction affirmed.