## BRATCHER v. UNITED STATES.
### No. 5344.

Circuit Court of Appeals, Fourth Circuit.

May 9, 1945.

Writ of Certiorari Denied June 18, 1945.

See 65 S.Ct. 1580.

Milton Kramer, of Washington, D. C. (Joseph A. Fanelli, of Washington, D. C., on the brief), for appellant.

George R. Humrickhouse, Asst. U. S. Atty., of Richmond, Va. (Harry H. Holt, Jr., U. S. Atty., of Norfolk, Va., and Fred E. Strine, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and NORTH-COTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment of conviction and sentence in the District

Court of the United States for the Eastern District of Virginia, at Alexandria, under which appellant was sentenced to imprisonment for a term of four years and fined in the sum of $1,000 for violation of Section 11 of the Selective Training and Service Act, 50 U.S.C.A.Appendix § 311, in evading service in the armed forces by presenting himself for induction pursuant to an order issued by his draft board in Washington, D. C., while in an abnormal physical condition resulting from the use of benzedrine which he had allegedly theretofore taken for the purpose of rendering his physical condition abnormal.

The indictment against the appellant, herein referred to as the defendant, was in three counts. The trial judge directed a verdict of not guilty on count one and the jury found the defendant not guilty on count three, but guilty on count two. We are only concerned on this appeal with count two which charged that on or about November 23, 1943, at Fort Myer, Arlington County, Virginia, the defendant, a registrant within the meaning of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 1 et seq., and regulations thereunder, did knowingly, wilfully, unlawfully and feloniously evade service in the land and naval forces of the United States, in that he presented himself to the armed forces induction station and to the medical examiners thereof for induction, pursuant to an order of Local Board No. 1 of Washington, D. C., while in an abnormal physical condition resulting from the use of a drug popularly known as benzedrine, which drug theretofore had been taken by the defendant for the purpose of rendering his physical condition abnormal and thus causing his rejection for service.

Prior to trial defendant moved to suppress the evidence obtained as a result of the physical examination which was given him on November 23, 1943, at the induction station at Fort Myer, on the ground that such examination was conducted for the purpose of obtaining evidence to be used against him and hence constituted an illegal search and seizure in violation of the Fourth Amendment to the Constitution, with the further result that the use of the evidence thereby obtained was compulsory self-incrimination in violation of the Fifth Amendment. After a hearing at which evidence was taken on the motion, the court denied it on the ground that defendant had totally failed to carry the burden resting on him to show that the object of the examination was to secure evidence to be used against him in a criminal prosecution.

A trial was had in November, 1944, at Alexandria. After the verdict, the defendant moved for a new trial which motion was denied and after sentence the defendant brought this appeal.

The defendant, about thirty years of age, was the organizer, manager, and conductor of a dance orchestra in Washington, D. C., and registered for the draft on October 16, 1940, in Washington, D. C., where he then and continuously thereafter resided and worked. On December 2, 1941, he was classified 1-B (for limited military service) on account of defective eyesight. On February 6, 1943, he was ordered to report on February 18, 1943, for induction, but that order was rescinded by his draft board. On March 16, 1943, he was classified III-A because of his ailing mother's dependency upon him for her support. On August 16, 1943, he was ordered to report for induction on August 28th, but was rejected and on September 15, 1943, was placed in IV-F (physically unfit for military service). Two months later, on November 12, 1943, he was again ordered to report for induction on November 23rd.

Upon reporting on November 23, 1943, defendant was sent to the Fort Myer induction station where his blood pressure was found to be 164/102, and he was sent to the Fort Myer Station Hospital for twenty-four hours for observation. During the observation period it developed from an analysis of his urine that the defendant had been taking a drug called benzedrine. This is a drug that has the effect of increasing blood pressure and is taken as a stimulant by persons who desire to keep awake. The Government contends that the defendant admitted having taken tablets the night preceding his examination on August 28, 1943, and during the night on November 22, 1943, and the early morning of November 23, 1943, he took two or three tablets and after reporting for induction that morning he again took two more tablets at the Fort Myer Station Hospital.

Several witnesses testified that the defendant admitted that he had taken the drug for the purpose of increasing his blood pressure and insuring his rejection by the examining board. There was medical evidence tending to show that the effect of the drug was to increase blood pressure.

'A number of points are raised by the defendant which are urged as reversible error:

1. Whether the Court erred in permitting a juror, one C. J. Ford, to sit as a member of the jury. This juror upon being questioned on his voir dire, stated that he had not formed or expressed an opinion as to the guilt or innocence of the defendant and that he knew of no reason why he could not hear the testimony and return a true verdict according to the law and the evidence. In response to a question by defendant's counsel as to whether he could judge the case as fairly as if he did not have two sons in the service, the reply was "No, I guess not". Counsel asked no further questions and made no objection when the court accepted Ford as a juror.

2. Whether the trial court erred in overruling defendant's motion to suppress certain evidence obtained at his examination in the hospital, in November.

3. Whether the trial court had jurisdiction.

4. Whether the corpus delicti was proven other than through alleged admissions of the defendant.

5. Whether the trial court erred in not granting defendant's motion to strike the testimony of witness Chambers who testified as to the urinalysis.

6. Whether the trial court erred in admitting in evidence, over defendant's objection and exception, Government Exhibit 3, an empty bottle alleged to have contained a specimen of urine.

7. Whether the court erred in sustaining the Government's objection to defendant's efforts to show that his examination in November, 1943, was not given him for the purpose of inducting him but only for the purpose of obtaining evidence.

8. Whether error was committed in permitting cross-examination of certain character witnesses.

9. Whether it was prejudicial to the defendant to permit the case to go to the jury on the third count.

10. Whether it was error to overrule defendant's motion for a directed verdict of acquittal on the second count.

11. Whether there was error in the charge of the court to the jury.

12. Whether it was error to adjourn the jury the night of November 28, during the taking of the evidence.

13. Whether there was error committed by the prosecuting officer in his argument to the jury.

14. Whether there was error in not granting a new trial because the foreman of the jury brought into the jury room, during the jury's deliberations, a newspaper containing a discussion of the case.

We will consider each of these points in the order in which they are enumerated.

The examination of the juror, Ford, upon his voir dire, as set out above, seems to have been full and fair. When juror Ford was accepted by the court defense counsel did not accept and did not strike the juror. The trial judge is vested with a wide discretion in determining the competency of jurors and his judgment will not be interfered with except in the case of an abuse of discretion. Lias v. United States, 4 Cir., 51 F.2d 215, affirmed per curiam 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505; see also Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann. Cas. 1138; Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244; Assaid v. United States, 4 Cir., 10 F.2d 752. We are of the opinion that the action of the court in accepting Ford as a juror was correct and did not prejudice the rights of the defendant.

The trial judge took evidence on the motion to suppress the evidence obtained while the defendant was in the hospital. A number of witnesses were heard and the trial judge in an able written opinion overruled the motion on the ground that the defendant had "totally failed to carry the burden resting on him". The determination of this question by the trial judge was the determination of a question of fact and was sustained by substantial direct evidence offered on behalf of the Government. Had the examination of the defendant shown that he was physically fit for induction into the limited services he would have been inducted at once and there was no evidence offered to show that the authorities intended anything other than to comply with the regulations and induct the defendant if he was found acceptable.

We do not think that defendant's physical examination could possibly be considered an unlawful search and seizure. The evidence was obtained under the Selective Training and Service Act and the regulations issued thereunder. We are therefore of the opinion that there was no

violation of the Fifth Amendment in admitting this evidence.

We are of the opinion that the action of the court below in refusing the motion to suppress the evidence was correct and that no constitutional rights of the defendant were violated by the admission of the evidence.

The evidence shows conclusively that the induction station at Fort Myer is in the State of Virginia and the District Court for the Eastern District of Virginia clearly had jurisdiction of the case because it was there that the offense, charged in the second count of the indictment, was committed.

█ Points four, five, six, seven, eight, nine and ten may all be considered together. An examination of the record shows that there was sufficient evidence, which if believed by the jury, would support the verdict. All the elements of the offense were properly proven. It was shown that defendant presented himself for induction in an abnormal physical condition; that such condition resulted from his taking of the drug benzedrine; that the drug was taken by him purposely to produce that abnormal condition and his consequent rejection. The testimony of witness Chambers was competent and there was no error in the refusal of the trial court to strike the evidence. The admission over defendant's objection and exception of an empty bottle was not of any consequence but in any event the exhibit was properly admitted and the admission of the reports of the examination of the defendant in 1941 and a written statement containing admission of defendant and a map were proper. The trial court was right in permitting the cross-examination of defendant's character witnesses.

In view of the verdict of the jury on the third count it is not necessary to consider the point raised that it was error to overrule the defendant's motion for a directed verdict on that count. The evidence of the Government, if believed by the jury, was amply sufficient to prove that the defendant's blood pressure was abnormal for him. There was no error in the charge of the trial judge to the jury and no objection was made to it.

█ At the time the court permitted the separation of the jury defendant and one of his counsel were present and acquiesced in the separation. It is settled that a jury may be allowed to separate during their deliberations Lucas v. United States, 8 Cir., 275 F. 405 certiorari denied 258 U.S. 620, 42 S.Ct. 272, 66 L.Ed. 795; Brown v. United States, 69 App.D.C. 96, 99 F.2d 131.

█ Objection was made to some remarks by the prosecutor in his argument to the jury. It is well settled that the remarks of a prosecutor do not constitute a basis for reversal unless they result in prejudice to the accused. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

█ It is only in the most exceptional cases that a defendant can remain silent and interpose no objection and after verdict has been returned object that the prosecutor made improper remarks to the jury. United States v. Socony-Vacuum Oil Co., supra; Crumpton v. United States, 128 U.S. 361, 11 S.Ct. 355, 34 L.Ed. 958; Dale v. United States, 7 Cir., 66 F.2d 666.

█ The only remark of the prosecutor, in his argument, to which the defendant's counsel objected, at the time, was the statement that defendant's counsel had cast reflections upon the integrity of the jury. This statement of the prosecutor was made in an effort to answer statements made by defendant's counsel in his argument and under the ruling of the court that the question raised was one for the jury to determine there was no resulting prejudice to the defendant. The authorities relied upon by defendant's counsel are easily distinguishable and are not controlling here.*

█ The mere fact that jurors have read newspaper accounts of the trial in which they are participants is not ground for a new trial. United States v. Reid, 12 How. 361, 53 U.S. 361, 13 L.Ed. 1023; Van Riper v. United States, 2 Cir., 13 F.2d 961, certiorari denied Ackerson v. United States, 273 U.S. 702, 47 S.Ct. 162, 71 L.Ed. 848; Tinkoff v. United States, 7 Cir., 86 F.2d 868, certiorari denied 301 U.S. 689, 57

---

* NOTE: New York Central R. v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706; Read v. United States, 8 Cir., 42 F.2d 636; Ippolito v. United States, 6 Cir., 108 F.2d 668; Lau Lee v. United States, 9 Cir., 67 F.2d 156; Hall v. United States, 4 Cir., 256 F. 748; Paquin v. United States, 8 Cir., 251 F. 579; Sparks v. United States, 6 Cir., 241 F. 777.

S.Ct. 795, 81 L.Ed. 1346. Even where the jury saw and discussed a newspaper headline to the effect that gamblers were betting ten to one that there would be an acquittal, the action of the trial court in denying a motion for a new trial was sustained. Beard v. United States, 65 App.D.C. 231, 82 F.2d 837, certiorari denied 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382.

There was no error in the refusal of the trial court to grant the motion for a new trial. A motion for a new trial is addressed to the discretion of the trial court, and the refusal to grant such a motion is not reviewable unless there is a manifest abuse of discretion. Holt v. United States, supra; Luke v. United States, 5 Cir., 84 F.2d 711, certiorari denied 299 U.S. 542, 57 S.Ct. 45, 81 L.Ed. 399; Sutton v. United States, 9 Cir., 79 F.2d 863.

The defendant had a fair and impartial trial; the question of his guilt or innocence was one for the jury; there was no harmful error in the trial of the case and the question of the severity of the sentence cannot be passed upon by us.

The judgment of the court below is accordingly affirmed.

Affirmed.